# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 2:15-cr-00106-JAD-CWH |
| Plaintiff, ) | |
| ) | **REPORT AND** |
| vs. ) | **RECOMMENDATION** |
| ) | |
| LARRY LOUCIOUS, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter was referred to the undersigned magistrate judge on Defendant Larry Loucious's ("Loucious") motion to suppress evidence for Fourth Amendment violations (ECF No. 21), filed June 29, 2015, the government's response (ECF No. 24), filed July 14, 2015, and Loucious's reply (ECF No. 26), filed July 21, 2015. Also before the Court are Loucious's supplement to the motion to suppress (ECF No. 41), filed September 2, 2015, the government's response (ECF No. 42), filed September 2, 2015, and Loucious's reply (ECF No. 43), filed September 3, 2015. After several continuances that were requested by the parties, a hearing was conducted on October 29, 2015. *See* ECF No. 57.

## BACKGROUND

Las Vegas Metropolitan Police Department ("LVMPD") Officer P. Sherwood ("Officer Sherwood") testified that on March 28, 2015, he was conducting traffic enforcement near the intersection of Michael Way and Eugene Avenue in Las Vegas, Nevada. While doing so, Officer Sherwood observed a vehicle that appeared to be traveling in excess of 40 m.p.h. in a 25 m.p.h. speed zone. Officer Sherwood confirmed that the vehicle was speeding by using his radar, which measured

the vehicle's speed at 42 m.p.h.  At 1603 hours, Officer Sherwood activated the lights and chirped the siren of his police motorcycle to conduct a traffic stop of the vehicle.   The vehicle stopped immediately.  After approaching the vehicle, making contact with the driver, and while standing at the driver's side window, Officer Sherwood testified that he could smell the odor of marijuana emanating from the vehicle.  Officer Sherwood testified that he did not recall whether the odor was from burned or unburned marijuana.  On cross-examination, Officer Sherwood agreed that no marijuana was found in the vehicle or on any suspect.  After obtaining a driver's license, proof of insurance, and registration from the driver, Officer Sherwood returned to his vehicle to conduct a records check.  Upon doing so, Officer Sherwood learned that the driver had outstanding warrants for his arrest.

Knowing that he would be arresting the driver and searching the vehicle because he had smelled marijuana, Officer Sherwood requested back-up.  The vehicle was occupied by three other African American individuals (i.e., one female and two males), in addition to the male driver.   One of the male companions in the car was Loucious, who was seated in the back seat of the vehicle. While waiting for back-up to arrive, Officer Sherwood obtained identification from each of the remaining passengers.  Officer Zachary Davis ("Officer Davis") arrived to assist Officer Sherwood at 1613 hours.   After a brief consultation between the officers, Officer Davis was given the identification cards of the remaining passengers so that he could conduct a records check.  The check, conducted at 1622 hours, revealed that Loucious had an outstanding warrant for his arrest.  The driver was removed from the vehicle and placed under arrest for his warrant, and then the remaining passengers were removed, among them  Loucious, who was placed under arrest pursuant to the warrant.

Officer Sherwood subsequently conducted a search of the vehicle and found, among other things, a firearm located in the back seat where Loucious had been sitting. Officer Sherwood requested assistance from Officer Costello who ultimately seized the firearm pursuant to a search warrant that he obtained.  It is this firearm that Loucious moves to suppress.

Following his arrest, Loucious was interrogated by Officer Costello.  The transcript of the interrogation was entered into evidence. After receiving *Miranda* warnings, Loucious ultimately admitted, among other things, that he possessed the firearm a few days earlier.  Loucious moves to

1   suppress the statements made during the interrogation.

2     On April 14, 2015, a federal grand jury returned an indictment against Loucious for a violation

3   of 18 U.SC. §§ 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm.

4                        **DISCUSSION**

5   **A.**    **Suppression of Firearm**

6     Loucious argues that the search of the vehicle was unconstitutional because no probable cause

7   existed to justify a search based on the smell of marijuana and absence of marijuana in the vehicle.

8   Loucious adds that because marijuana use for medical purposes is legal in Nevada, the odor of

9   marijuana does not create probable cause that a crime has been committed, and so the search of the

10   vehicle was illegal.  Loucious further argues that although he lacks the possessory or ownership

11   interest in the vehicle to directly challenge the search of the vehicle, he may contest the lawfulness of

12   his own detention and seek to suppress evidence found in the vehicle as the fruit of his illegal

13   detention.

14     The government responds that because Loucious lacks standing to challenge the search of the

15   vehicle, and that his detention during the traffic stop was not improper, the motion should be denied.

16   The government also points out that regardless of the legality of medical marijuana, it is unlawful for

17   a person who is under the influence of a controlled substance to drive on a highway in Nevada, and

18   so probable cause may exist to justify a search.  *See* NRS 484C.110(2).

19     The Fourth Amendment addresses "the right of the people to be secure in their persons, houses,

20   papers, and effects against unreasonable searches and seizures."  U.S. Const. Amend. IV.  The Fourth

21   Amendment protects reasonable and legitimate expectations of privacy.  *Katz v. United States*, 389

22   U.S. 347 (1967).  It protects "people not places."  *Id*.  Evidence obtained in violation of the Fourth

23   Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree."

24   *Wong Sun v. United States*, 371 U.S. 471 (1963).

25     It is axiomatic that an individual "seeking to exclude evidence allegedly obtained in violation

26   of the Fourth Amendment must have standing to challenge the illegal conduct that led to the discovery

27   of the evidence."  *United States v. Pulliam*, 405 F.3d 782, 785-786 (9th Cir. 2005); *see also Rakas v.*

28   *Illinois*, 439 U.S. 128, 134 (1978) (finding that defendant did not have standing to challenge the search

of a car in which he was a passenger, and seizure of the gun found in the car did not violate his Fourth Amendment rights).  The "proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005) (citation omitted) (finding that defendant failed to show he had a reasonable expectation of privacy in the laptop seized by police).  "To invoke the protections of the Fourth Amendment, a person must show he had a 'legitimate expectation of privacy.'" *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000).  To establish a legitimate expectation of privacy, a person must show a subjective expectation of privacy that society is prepared to recognize as objectively reasonable.  *Id.*  "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134.

As a general matter, a person does not possess a reasonable expectation of privacy in a vehicle in which he has no lawful ownership or possessory interest.  *See Rakas*, 439 U.S. at 148-49 (noting that a passenger who asserts neither a possessory nor property interest in a vehicle does not have a legitimate expectation of privacy in the vehicle).

Here, Loucious concedes he has no possessory or ownership interest in the vehicle.  Loucious claims that because marijuana use for medical purposes is legal in Nevada, the odor of marijuana does not create probable cause that a crime has been committed, and so the search of the vehicle was illegal. Even if Loucious's claim is true, Loucious has no reasonable expectation of privacy in the vehicle. Indeed, Loucious has no standing to challenge the lawfulness of the police seizure of the firearm from the vehicle.  It is also irrelevant whether Officer Sherwood had probable cause[1] to search the vehicle because Loucious has no standing.  Meanwhile, Loucious makes no argument that the traffic stop of the vehicle for speeding was improper.  Accordingly, the firearm should not be suppressed.

In addition, although Loucious does not argue that the duration of the traffic stop was unreasonable, the Court will consider this issue.  Because a routine traffic stop is only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest.  *See Berkemer v.*

---

[1] A police officer who has reasonable suspicion or probable cause to believe that a violation of traffic laws has occurred may stop the vehicle to investigate the infraction. *Whren v. United States*, 517 U.S. 806, 812-3 (1996); *see also United States v. Lopez-Soto*, 205 F. 3d 1101, 1104-05 (9th Cir. 2000).

*McCarty*, 468 U.S. 420, 439 (1984).  The legality of traffic stops is appropriately analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968).  *See United States v. Sharpe*, 470 U.S. 675, 682 (1985).  *Terry* expressly allows officers, when conducting *Terry* stops, to ask questions "reasonably related in scope to the justification for their initiation."  *Id.*  An officer may follow up on answers to questions or information he otherwise gleans during the traffic stop to investigate suspected criminal activity, and in doing so, does not impermissibly extend either the duration or the scope of the stop.  *See e.g., United States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir. 2005) (holding that the period of detention can be permissibly extended if new grounds for suspicion of criminal activity continue to unfold).

Here, Officer Sherwood commenced his investigation of the traffic stop and the suspected possession or use of marijuana at 1603 hours.  Upon receiving the driver's license, Officer Sherwood realized the driver had a pending warrant and called for back-up.  Officer Sherwood testified that he called for back-up because:  (1) there were three other individuals in the vehicle, (2) Officer Sherwood believed he had probable cause to search the vehicle because of the smell of marijuana, and (3) the warrant for the driver indicated that he had violent tendencies.  The Court therefore finds it reasonable that Officer Sherwood briefly delayed the investigation until police back-up arrived.  Officer Davis arrived at 1613 hours.  Nine minutes later, at 1622, after being briefed and receiving Loucious's license from Officer Sherwood, Officer Davis learned that Loucious had an outstanding warrant for his arrest. Loucious was then removed from the vehicle and arrested.  Loucious makes no argument that the arrest warrant was invalid.  Thus, the Court finds that the delay from the time the vehicle was stopped until Loucious was arrested (based upon the outstanding warrant) was reasonable under the circumstances.[2]

**B.     Suppression of Statements**

Loucious challenges the validity of the *Miranda* warning he received when he was interviewed

---

[2] During the hearing, Loucious argued that the reason for the stop was because there were four African Americans in the vehicle, thereby showing that the traffic stop was pretextual, in violation of the Fourth Amendment.  However, the reasonableness of the traffic stop does not depend on the actual motivations of the individual officer involved. *See Whren v. United States*, 517 U.S. 806, 813 (1996).  "Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis." *Id.*; *see also Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) ("Efficient and evenhanded application of the law demands that we look to whether the arrest is objectively justified, rather than to the motive of the arresting officer.") Accordingly, the Court rejects Loucious's pretextual search claim.

after his arrest.  The warning given is memorialized in the transcript of Loucious's interview, and not

in dispute.  Detective Costello provided the following *Miranda* warning to Loucious:

> You understand you have the right to remain silent.  You understand that anything
> you say can be used against you in a court of law.  You have the right to the
> presence of an attorney during questioning and if you cannot afford an attorney,
> one will be appointed before questioning.  Do you understand those rights?

Loucious argues that the warning provided above did not advise him that he had a right to consult with

counsel prior to questioning.

In response, the government contends that the warning Loucious received was consistent with

*Miranda* requirements.

Loucious, in reply, submits a recent decision from this district, *United States v. Chavez*, 2:15-

CR-035-RFB-CWH, 2015 WL 3454497 (D. Nev. Jun. 1, 2015), which relies on *People of Territory*

*of Guam v. Snaer*, 758 F.2d 1341, 1342 (9th Cir. 1985).  The court in *Chavez* found that the *Miranda*

warning provided was insufficient because the sequence of statements in the warning suggested that

an attorney could be appointed to be present during an interrogation and that the attorney would be

appointed right before such questioning occurred.  However, the court also found that its holding did

not suggest that a defendant could consult with an attorney prior to questioning so that a defendant

could decide, after such consultation, whether to speak with officers at all.  Moreover, the court found

that, in the warning, the earlier sentence's reference to the presence of an attorney undercuts the notion

that the attorney would be able to have an active role in consulting with, or advising, a defendant

before or even during questioning.

A review of *Miranda v. Arizona*, 384 U.S. 436 (1966), reveals that it prescribes the following

four warnings:

> [A suspect] must be warned prior to any questioning (1) that he has the right to
> remain silent, (2) that anything he says can be used against him in a court of law,
> (3) that he has the right to the presence of an attorney, and (4) that if he cannot
> afford an attorney one will be appointed for him prior to any questioning if he so
> desires.

*Id*. at 479.  These four warnings "are invariable," but the words used may be varied so long as

"essential information is conveyed."  *Florida v. Powell*, 559 U.S. 50, 60 (2010).  In determining

whether police officers adequately conveyed the four warnings, this Court is not required to examine

6

the words employed "as if construing a will or defining the terms of an easement"; rather, the "inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by Miranda." *Id*. (quoting *Duckworth v. Eagan*, 492 U.S. 195, 203(1989)).

While no special incantation is required to satisfy *Miranda*, a valid waiver requires not only that a defendant be warned of his right to counsel during questioning, but that defendant be warned of his right to consult with an attorney before questioning. *California v. Prysock*, 453 U.S. 355, 359 (1981); *Snaer*, 758 F.2d at 1342. "[I]t is extremely important that a defendant be adequately warned of this right." *Snaer*, 758 F.2d at 1343. Although *Miranda* makes clear that a defendant has a right to consult with counsel before questioning, it is ambiguous as to how explicitly the person must be warned of that right. *Id.* at 1342. To comport with the Fifth Amendment, however, the advisement does not have to be explicit as long as it "adequately convey[s] notice of the right to consult with an attorney before questioning." *Id*. at 1343.

In *Snaer*, the Ninth Circuit encountered a *Miranda* warning that failed to expressly state that a defendant had the right to consult with a lawyer "before questioning" or "prior to questioning." 758 F.2d at 1343. The warning only stated that "[y]ou have a right to consult with a lawyer and to have a lawyer present with you while you are being questioned." *Id*. The Ninth Circuit held that "the first part of that sentence read in the context of the latter half of the sentence does adequately convey notice of the right to consult with an attorney before questioning" even though it did not explicitly inform him of that right. *Id*.

Here, Loucious was told that he had the right to the presence of an attorney during questioning and if he could not afford an attorney, one would be appointed **before** questioning. It therefore appears that the warning here was more explicit than the one found sufficient in *Snaer*. In this case, moreover, the Court finds that, as in *Snaer*, the right to speak with a lawyer before questioning could easily be inferred from the warnings actually given. *See Snaer*, 758 F.2d at 1343. To tell someone they have a right to an attorney is to tell them they can consult with that attorney before speaking with a law enforcement agent. Thus, the statement reasonably conveyed the message to Loucious that he could consult with an attorney prior to questioning. *See id; see also United States v. Connell*, 869 F.2d 1349, 1352 (9th Cir. 1989) ("Where individuals have been separately advised both of their right to counsel

before and during questioning, and of their right to appointed counsel, the court will assume that a logical inference has been made–that is, that appointed counsel is available throughout the interrogation process."). In this case, as in *Snaer*, the entirety of the warning sufficiently conveyed the *Miranda* requirements.

Having found that the *Miranda* warnings provided to Loucious were sufficient, the question the Court must now decide is whether Loucious waived any of his *Miranda* rights. "For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, a defendant's waiver of *Miranda* rights must be voluntary, knowing, and intelligent." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). Loucious makes no argument that his waiver was not valid, and the transcript reveals that Loucious indicated he understood his rights and answered questions. Accordingly, the Court finds that Loucious voluntarily, knowingly, and intelligently waived his *Miranda* rights.

## **RECOMMENDATION**

Accordingly, **IT IS HEREBY RECOMMENDED** that Loucious's motion to suppress evidence for Fourth Amendment violations (ECF No. 21) be **denied**.

## **NOTICE**

This report and recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: December 3, 2015

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**

8